IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CALVIN WINSTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. 00-RRA-2364-S |
| ) | |
| MAIL SORT BIRMINGHAM, INC., ) | |
| ) | |
| Defendant. ) | |

**ENTERED**

**MAY 2 8 2002**

## MEMORANDUM OF OPINION

The plaintiff, a black male, presents a race discrimination claim under 42 U.S.C. § 1981. Before the court is defendant MSB's motion for summary judgment. Along with its motion, the defendant filed a brief in support thereof. The plaintiff filed a response brief, to which the defendant filed a reply. Both parties have submitted summary judgment evidence. For this action to proceed, the summary judgment evidence must be sufficient to support those findings necessary for the plaintiff to prevail, and, of course, the court must view the evidence in the light most favorable to the plaintiff and draw all reasonable inferences against the moving party, MSB. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The court's decision will be based only upon the evidence referenced by the parties. *See Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 269 (7th Cir. 1986).

Defining the Claim

The plaintiff's complaint alleges one claim, discriminatory termination of employment: "The reason given for the plaintiff's termination was a restructuring of their technical positions. Immediately following the plaintiff's termination, a white individual [Chris Catalano] was hired to perform essentially the same job responsibilities as the plaintiff." *Complaint*, ¶ 4. At times, however, the plaintiff refers to evidence, cites caselaw, and argues as if he is presenting a promotion discrimination claim.[1] He is not presenting a promotion claim, because the complaint makes no such claim.[2] Therefore, the only question before the court is whether the job in question is nothing more than the plaintiff's old job under a new, pretextual title, "Manager/Technical and Building Services," given to Catalano because the defendant wanted

---

[1] A mere lateral transfer will not support a promotion claim. *See Doe v. DeKalb County*, 145 F.3d 1441 (11th Cir. 1998).

[2] Moreover, this plaintiff could not present simultaneously a discharge claim and a promotion claim. The plaintiff could not have it both ways. The defendant's action either created a new job which went to Catalano --- the plaintiff would have argued that he wrongly was not considered --- or the defendant took away the plaintiff's job in order to give it to Catalano simply because the plaintiff is black and Catalano is white. Additionally, it is unnecessary to discuss the validity of the defendant's reasons for deciding to keep Thomas and dismiss the plaintiff, which were that (1) Thomas clearly had more seniority than the plaintiff and (2) the plaintiff's work record at MSB was some times poor; it is unnecessary because the plaintiff does not claim that MSB's decision to discharge him instead of Thomas was discriminatory. (It is noted that if the defendant's restructuring reason for letting the plaintiff go could be found to be pretextual, the defendant may not then rely on seniority and work performance as being alternative reasons for discharging the plaintiff, because seniority and work performance are not separate and distinct reasons for dismissing the plaintiff, rather they are dependent upon and are part of the defendant's stated reason for the *necessity* of having to choose which technician to dismiss: the defendant's restructuring of jobs. MSB's consideration of seniority and work performance was consistent with restructuring.)

2

to replace the plaintiff with a white person.

## Facts

The plaintiff was hired in August of 1999 as a "technician" whose job was to maintain and repair MSB's equipment and facilities. At the time the plaintiff was hired, the defendant had one other technician, a white man, Barry Thomas, and an apprentice technician, a black man. Thomas had been with the defendant approximately nine years when the plaintiff came on board. The majority of workers at MSB were black.

Lisa Thompson was the president and chief operations officer of MSB, while her father, Gerald Thompson, was the CEO. In addition to performing mechanical and electrical matters, Mr. Thompson's duties included several supervisory or managerial functions. Shortly before July of 2000, Mr. Thompson began preparing for his retirement. He began working less, and was paid minimum wage for his efforts.

According to the defendant, someone was needed who could perform Mr. Thompson's duties. However, Ms. Thompson, Mr. Thompson, and other company officers determined that MSB financially could not afford to hire someone to replace Mr. Thompson unless some restructuring was done. MSB decided to create a new position which would combine Mr. Thompson's supervisory duties with some technician work. MSB further decided to obtain

3

money to fund the new position by eliminating one of the technician jobs, the plaintiff's. Ms. Thompson states in her affidavit:

> In order to facilitate my father's retirement, we had to restructure some of the positions at Mail Sort. We did not have the financial ability to hire management personnel who would simply replace my father as concerns his managerial duties. As a result, we decided to eliminate one of our two technician positions."

*Lisa Thompson Affidavit*, p. 2. On June 27, 2000, the defendant offered Chris Catalano a position. On July 7, 2000, the plaintiff's employment was terminated. On July 8, 2000, Catalano accepted the defendant's offer and went to work as "Manager/Technical and Building Services."

Ms. Thompson states the duties of the new position:

> The Manager/Technical and Building Services position was designed in an effort to help "fill my father's shoes" when he leaves the company. This position includes supervising the technicians and apprentice technician positions. As Manager/Technical and Building Services, Chris Catalano is also charged with supervising independent contractors who perform various activities in the repair, maintenance and additions to our facilities. As was my father, Mr. Catalano must be competent to perform the job of technician and be able to repair and maintain our equipment. However, competency as a technician is only a very small part of this position.

*Lisa Thompson Affidavit.* at 5.

Ms. Thompson judged Catalano's qualifications sufficient for the new job:

> Chris Catalano is well qualified for the Manager/Technical and Building Services position he now occupies. Some of his qualifications, which, to me, indicated he had the experience necessary for the position included his work from 1990 to 1998 at The University of Alabama at Birmingham in the Maintenance Department. During his employment at The University of Alabama at Birmingham, he maintained, operated and serviced complex equipment and electronics. Calvin Winston had no such experience and had never worked in a position for this length of time, which, to me, evidenced commitment to his work by Chris Catalano.
> Chris Catalano also is a Master Sergeant in the U. S. Air Force National Guard and has been with the National Guard since 1990. He is the Superintendent of the Air Conditioning/Refrigerant Mechanical Section. In this position, he is responsible for the scheduling and direction of maintenance work on all the base facility air conditioning and refrigeration equipment. His duties also include being responsible for technical training for enlisted shop members. Therefore, Mr. Catalano has had ten years

4

of experience in supervising other technicians and employees regarding the operation and maintenance of complex technical equipment. He also has experience in coordinating and supervision of outside contractors.

Mr. Catalano has many other qualifications which I found demonstrated he would be capable of performing as the Manager/Technical and Building Services. Some of these qualifications were reflected in his resume and others were developed during my personal interviews with him.

*Id.* at 6-7.

MSB gives its employees identity badges. When he went to work for MSB, the plaintiff was given a purple badge which was worn by technicians, while Catalano was given a red badge which is worn by managerial employees. The plaintiff's salary was $33,000 a year. Catalano was hired at $35,000 per year.

The plaintiff disputes Ms. Thompson's statement that Catalano's supervisory duties included supervising independent contractors. The plaintiff states that the legal definition of independent contractor does not include supervision by the person hiring the independent contractor. The plaintiff asserts that, if an independent contractor can be supervised by the person hiring him, such supervision should not be considered in deciding whether the position of Manager/Technical and Building Services involved duties not performed by technicians because the plaintiff, as a technician, "supervised" independent contractors. He states in his affidavit:

> I have supervised independent contractors who came to various activities in the plant when the need arose, if you want to call that supervision. For example, it was my to call the manufacturer of the machines when they acted up and to direct them when they got to the plant on what they had to fix. When the outside electricians came to plant to put in extra electric boxes, I told them where to put them and where we wanted to place our machines. When we had problems with the Skytech machine, I would call the manufacturer and let her know what the problem was that we were having and she would send her employees out to fix. I would then direct them to what needed to be done and then when they finished their job, I would return to make sure that it was

5

done properly. These are three examples of what I regularly did in my job in regards to directing independent contractors that came on the plant site. I told them what needed to be done. After it was done, I checked to make sure it was properly done. That was my job.

*Plaintiff's Affidavit*, pp. 1-2.

The plaintiff further contends that he worked independent of supervision. In his brief, however, the plaintiff points to his own deposition where he testified that although he reported mostly to Ms. Thompson, sometimes he was supervised by Mr. Thompson. *Plaintiff's Opposition*, p. 2; *Plaintiff's Deposition*, p. 43. In his subsequent affidavit, however, the plaintiff contends that he was not supervised by anyone. He states:

> My job was to fix machines that broke down and to maintain the machines. The machines dictated what I did, unless I was requested to perform a special project, like running conduit, electric boxes, water lines, air lines, painting, carpentry, plumbing-basically maintenance of the plant. Nobody supervised me in these tasks. I was told what needed to be done and I went and did. I worked with Barry Thomas. He was also a technician, the same as I was. We did the same job. Neither he nor I were supervised. We were told which machines to fix and we fixed them.

*Plaintiff's Affidavit*, p. 2. The evidence shows, however, that Mr. Thompson made notes of instances of poor work performance by the plaintiff. Some times the plaintiff's work had to be completed or redone by Mr. Thompson or Thomas:

> Calvin Winston's poor performance as an employee included his refusal or failure to complete assigned tasks in a competent and timely fashion. He was instructed on numerous occasions to complete items of work which he failed to complete. On other occasions, he improperly completed work assignments. As a result of Calvin Winston's improper work, numerous items of his work had to be redone by Gerald Thompson or Barry Thomas.

6

*Lisa Thompson Affidavit*, p. 3.[3] Additionally, the plaintiff testified that the technicians received their work assignments from Mr. Thompson. In response to being asked at his deposition whether he had any evidence of an intent to discriminate against him, the plaintiff stated that he had no such evidence, other than his opinion that Thomas ---Thomas who had much more seniority and sat in on the plaintiff's interviews for the technician's job --- got their work assignments from Mr. Thompson constituted an act of discrimination. The plaintiff also testified that he has no personal knowledge of Catalano's duties and never observed Catalano at work.

Discussion

The evidence shows that the position of Manager/Technical and Building Services was indeed a new position. The fact that Catalano's qualifications matched the skills required of Manager/Technical and Building Services is consistent with MSB's contention that this position was a new position, as is the fact that two workers performing different functions — the plaintiff and Mr. Thompson — left MSB, but only one employee — Catalano — was hired as a replacement. Even if the supervision of independent contractors is discounted as a function of Manager/Technical and Building Services, based on the plaintiff's statement that he, as a technician, did the same thing, this management position unquestionably included supervision of the technicians. Mr. Thompson's notes of instances of the plaintiff's poor performance, even if the plaintiff were to contest their accuracy, nonetheless show that Thompson kept an eye

---

[3] The plaintiff does not dispute this statement with summary judgment evidence.

on the plaintiff's work, work which he, Thompson, assigned to the technicians.[4] Thompson also redid some of the plaintiff's work. The plaintiff admitted in his deposition that although he reported mostly to Ms. Thompson, he was sometimes supervised by Mr. Thompson. The fact that the plaintiff in his subsequent affidavit sets out with particularity the various jobs he did as a technician and states that he was not supervised does not create a factual issue as to whether the technicians were supervised by Mr. Thompson. Apparently the plaintiff thinks that he was not being supervised unless Mr. Thompson was standing behind him looking over his shoulder while he did his work. Mr. Thompson might not have been at the plaintiff's shoulder watching him as he did his work assignments, but the evidence is clear that Mr. Thompson told the plaintiff the jobs he wanted done and inspected the quality of his work; in other words, Mr. Thompson supervised the technicians, and this supervision of technicians and apprentice technicians was part of the duties of the new position, the position given to Catalano.[5]

The plaintiff testified that he could not name any acts of discrimination committed by MSB, other than Thomas' getting their work assignments from Mr. Thompson. Thomas was the senior technician who had participated in interviewing the plaintiff. Mr. Thompson's giving Thomas the technicians' work assignments was not an act of discrimination. The plaintiff's

---

[4] In his brief, the plaintiff states that, contrary to company policy, these notes were not shown to him, he knew nothing about them during the time of his employment, and therefore they cannot be used to show that he was dismissed because of poor work performance. The court is not considering the plaintiff's work performance as a reason his employment with the defendant was terminated. The notes are relevant to the issue of whether Mr. Thompson supervised the plaintiff's work.

[5] The plaintiff's statement in his brief that he was not given an opportunity to apply for the job of Manager/Technical and Building Services, as well as other statements of that nature, imply recognition of the fact that this position was a new one.

argument that MSB's telling him he was being let go because the company was restructuring its technician position, and MSB's stating to the Department of Industrial Relations that the plaintiff's position was eliminated for budget reasons, are inconsistent, is incorrect. Those two statements are not inconsistent: restructuring was necessitated by budget constraints. The actions of the defendant were all consistent with restructuring. Finally, it is noted that it does not make sense that MSB, a company whose majority of employees was black, would dismiss a black employee it had hired less than a year ago, in order to give his job to a white man.[6]

The plaintiff, a minority member, suffered an adverse employment action. It is concluded, however, that the evidence to support a finding of pretextual discharge is simply not present in this case. Wherefore, the defendant's motion for summary judgment is due to be granted and this action dismissed. An appropriate order will be entered.

DONE this 24th day of May, 2002.

*/s/ Robert R. Armstrong*
Robert R. Armstrong, Jr.
United States Magistrate Judge

---

[6] If MSB had wanted to get rid of the plaintiff, it might have had the ammunition to do so — the plaintiff's work performance. The defendant, however, dismissed the plaintiff because his position was terminated due to restructuring.

9